In the Matter of the Liquidation of NEW YORK TITLE AND MORTGAGE COMPANY.

Supreme Court, Additional Special Term, New York County, June 14, 1938.

*Wagner, Quillinan & Rifkind* [*Simon H. Rifkind* and *Sidney R. Nussenfeld* of counsel], for the creditors' committee.

*Edward F. Keenan*, for the Superintendent of Insurance, as liquidator.

*Jacob L. Holtzmann*, special counsel for the Mortgage Commission of the State of New York.

*Barber, Fackenthal & Giddings* [*William A. Barber* of counsel], for the committee of stockholders, the New York Title and Mortgage Corporation and the receivers of the New York Title and Mortgage Company, in liquidation.

*Leon Leighton*, for certificate holders.

*Alexander Pfeiffer*, for the committee of creditors.

*Thomas Keogh*, for the trustees of Series Q and others.

*Abraham N. Geller*, for the trustees of Series N-58 and others.

*Sherman S. Rogers*, for the trustees of Series C-2.

*Kramer & Kleinfeld* [*Barnett Kaprow* of counsel], for the trustees of Series B-K.

*John Holley Clark, Jr.*, for Grace Hetner and others.

*Davies, Auerbach & Cornell* [*Ralph C. Williams, Jr.*, of counsel], for the Irving Trust Company.

*M. B. & D. W. Blumenthal*, for the Independent Guaranteed Mortgage Certificate Holders Protective Committee.

FRANKENTHALER, J. This is a motion by the creditors' committee of New York Title and Mortgage Company for confirmation of the referee's report of Hon. James A. Martin, and for approval of the plan of reorganization recommended in said report.

By order of this court, dated May 12, 1937, the referee was appointed " to take proof and report to the Court, as promptly

as possible with his opinion and recommendations, as to the fairness and equitableness " of a proposed plan of reorganization " and of any other plans which may be submitted to him, together with any suggested modifications or amendments." Notice of the first hearing was given to each creditor, certificate holder, stockholder and other person interested in the affairs of the New York Title and Mortgage Company in liquidation, except title policyholders who had not filed proofs of claim. In addition notice was published in the New York *Times* and in the New York *Herald-Tribune*. Public hearings were held at which full and complete opportunity was afforded to all persons interested to present evidence, with the result that the record consists of more than 900 pages, together with 402 exhibits. Hearings were started in May, 1937, and not concluded until February, 1938. At the first hearing over 500 persons appeared. Numerous proposals of amendments to the plan of reorganization, briefs and other data were submitted to the referee. At the latter's suggestion many conferences between attorneys were held in advance of stated hearings in an endeavor to exchange views and facilitate agreement upon the plan and proposed modifications, and thereby reduce to a minimum the points of difference. A number of conferences were also held by the referee with the attorneys for the Superintendent of Insurance, the Mortgage Commission and various creditors, as the result of which the differences between the parties were clarified and to a very large extent eliminated. The plan of reorganization which the referee has recommended to the court appears to meet with the almost unanimous approval of the creditors of New York Title and Mortgage Company. The only objection to the plan which requires discussion is that interposed by the attorney for the committee of stockholders, who complains of the fact that the plan expressly excludes stockholders from participation therein.

A brief summary of the main provisions of the plan is necessary in order to demonstrate the lack of merit in the stockholders' opposition thereto. The plan provides that three reorganization managers, to be appointed by the court upon approval of the plan, are to request the Superintendent of Insurance, as liquidator of New York Title and Mortgage Company, to cause a new corporation to be organized, hereafter referred to as the " mortgage company." The Superintendent is to transfer to the mortgage company all of the capital stock of New York Title Insurance Company, which was formed by the Superintendent in 1933, at the time New York Title and Mortgage Company was placed in rehabilitation, to continue the title insurance business formerly conducted by

New York Title and Mortgage Company. In addition the Superintendent is to transfer to the mortgage company assets of New York Title and Mortgage Company of a fair value of not less than $5,000,000 and not more than $7,500,000, as he in his discretion may determine. The mortgage company is to have a capital of $3,000,000, represented by 3,000,000 shares of the par value of one dollar each. The balance of the assets of the mortgage company is to be credited to its surplus account. The mortgage company is to have the power, among others, of engaging in a mortgage and servicing business, including (a) the making of mortgage loans, (b) the servicing of mortgages, (c) the management of real estate, and (d) the exercise of the functions of a mortgage bank and of a mortgage indemnity company to the extent authorized by law.

Whenever, after the approval of the plan by the court, the reorganization managers in their discretion shall be of the opinion that a sufficient percentage of creditors have assented to the plan to render its consummation feasible, they are to petition the court, on notice to the Superintendent of Insurance, for an order declaring the plan operative and in effect, provided, however, that no such petition shall be filed unless (a) the holders of not less than two-thirds in amount of all outstanding guaranties upon which claims have been filed shall have assented to the plan, or (b) the holders of not less than approximately two-thirds in amount of the estimated allowable claims shall have so assented.

After the plan shall have been declared in effect, the reorganization managers, when they deem the circumstances appropriate, are to be under the duty of requesting the Superintendent of Insurance to apply for an order authorizing him to sell the capital stock of the mortgage company, at a price and upon terms satisfactory to him and approved by the court. At such sale the reorganization managers are to have the power to purchase all or substantially all of the stock of the mortgage company for the benefit of assenting creditors. In the event that the reorganization managers are the successful bidders for the stock, the Superintendent of Insurance will be requested not to require them to pay in cash the entire amount bid at such sale, but to transfer the stock so purchased to them and to permit them to apply on account of the purchase price such amounts as would be due and owing to them from the Superintendent of Insurance as their distributive shares on claims of assenting creditors held by the reorganization managers. These claims will be held by the reorganization managers, under the terms of the plan, by virtue of the provision therein that assenting creditors shall execute assignments of their claims against New York Title and Mortgage Company to the reorganization managers.

After the sale of the stock of the mortgage company the Superintendent of Insurance is to liquidate the remaining assets of New York Title and Mortgage Company and distribute the proceeds of the sale and of the liquidation among all creditors in accordance with their respective interests. If any surplus remains after full payment of all creditors' claims, it is to be distributed among the stockholders.

In the event that the reorganization managers are the successful bidders at the sale of the stock of the mortgage company, they are to cause all of its capital stock to be issued to three voting trustees, to be appointed by the court, who are to act pursuant to a voting trust agreement effective for the maximum period permitted by law (subject to earlier termination under certain circumstances unnecessary to discuss at this time). The voting trustees are to issue to each assenting creditor a voting trust certificate for shares of stock of the mortgage company in the same ratio to 3,000,000 as the claim of such creditor, as finally allowed in the liquidation proceedings, bears to the total of all claims of all assenting creditors finally allowed in said proceedings. In this manner the assenting creditors will become the owners of the mortgage company, and its affairs will be managed and controlled by the voting trustees for the period fixed in the voting trust agreement.

The proceedings now being conducted by the Superintendent of Insurance for the proof and allowance of claims against New York Title and Mortgage Company in liquidation are to be completed by him as promptly as possible. Although assenting creditors are to assign their claims to the reorganization managers, as previously observed, and the latter are under the duty of prosecuting said claims to final allowance, any creditor may expressly reserve to himself in the instrument of assignment, or thereafter, the right to prosecute his claim himself. Creditors claiming or holding trust or preferred claims are to be paid " as the nature of their respective cases requires," but they may, on waiving any right to priority or preference, join in the reorganization with other creditors by executing assents. Creditors who shall not have consented to the plan on or before the last day fixed for the filing of assents shall be barred from participation in the reorganization and their rights shall be determined in the liquidation proceedings under article XI of the Insurance Law as if there were no plan of reorganization.

The gist of the plan is the creation by the Superintendent of Insurance of a mortgage company with assets of between $9,000,000 and $11,500,000 (including the stock of New York Title Insurance Company), and the sale of the stock of the mortgage company to

assenting creditors at such price as the Superintendent of Insurance may fix, subject to the court's approval. Those assets of New York Title and Mortgage Company which are not sold will be liquidated by the Superintendent in the same manner as if no plan of reorganization were in existence and the proceeds distributed as required by the Insurance Law. Non-assenting creditors will receive their distributive shares of the proceeds resulting from (1) the sale of the stock of the mortgage company by the Superintendent of Insurance and (2) the liquidation of the other assets of New York Title and Mortgage Company. If any surplus remains after payment in full of all creditors' claims, the stockholders are to receive said surplus.

The stockholders maintain that the proposed plan is unfair and contrary to law in excluding them from participation in the benefits of the plan. The referee, in his report (p. 57), states that the reason for the exclusion of the stockholders " is that New York Title and Mortgage Company is so clearly insolvent that no equity can exist for stockholders," and that they, therefore, " need not be considered in any plan of reorganization." Assuming that the stockholders are correct in their contention that the record before the referee and now before the court does not legally establish that New York Title and Mortgage Company is insolvent, in the sense that the claims which will be allowed against it will exceed the assets available to pay them, the plan nevertheless violates no rights of the stockholders. To quote from the referee's report (pp. 57–59): " This contemplated reorganization, as heretofore indicated, is not a reorganization plan in the conventional sense. It constitutes merely an agreement on the part of creditors to dispose of their rights in the assets of the liquidated company in a manner which the assenting creditors believe will be most advantageous. * * * This is not a typical reorganization. Assenting creditors are joining together for the purpose of acquiring from the Superintendent of Insurance, as Liquidator, certain of the assets in liquidation, in order that they may utilize and dispose of those assets in a manner which they deem most advantageous to themselves. If the Superintendent, as Liquidator, realizes from the sale of assets to the representatives of creditors and from the proceeds of the balance of the assets which he will liquidate, more than enough to pay off all creditors, with interest, as provided by law, the stockholders necessarily are entitled to any surplus. Nothing in the plan proposed takes away or interferes with this legal right belonging to stockholders."

As is well stated in the brief submitted by counsel for the committee of creditors of New York Title and Mortgage Company: " Briefly described, the plan is no more and no less than a consensual arrangement by assenting creditors for the disposition and use of their distributive shares in the liquidation of New York Title and Mortgage Company. It does not affect the distributive shares of non-assenters, or the rights, if any, of stockholders. It does not affect the statutory duties of the Superintendent of Insurance or the Mortgage Commission. * * * In purchasing the stock of the Mortgage Company from the Superintendent of Insurance, assenting creditors will pay the fair value thereof — to wit, such price as may be fixed by the Superintendent of Insurance with the approval of the court. On receiving the price the Superintendent will distribute to non-assenting creditors their *pro rata* shares thereof. The balance of the assets in the hands of the Superintendent, as liquidator, will be liquidated in the regular course and the proceeds thereof will be distributed in accordance with law. Assenters and non-assenters alike will be given their *pro rata* distributive shares. * * * The plan does not in any sense alter the liquidation process and consequently does not affect the right of stockholders to participate in dividends in the liquidation in accordance with the statute as above set forth. This is so whether or not the company is insolvent. * * * Far from being destroyed, stockholders' rights are fully protected by the plan. If after creditors have been paid in full a distributable balance remains in the hands of the Superintendent, that balance may in accordance with the statutory procedure enure to the benefit of stockholders."

The court is in complete accord with these views of the referee and of counsel for the creditors' committee. Clearly the stockholders would have no right to complain if the Superintendent of Insurance, with the court's approval, were to sell at a price approved by the court as fair and reasonable some or all of the assets of New York Title and Mortgage Company. The mere fact that the creditors have entered into an arrangement, open to other creditors, permitting them if they should become the successful bidders at the Superintendent's sale, to apply their distributive shares (on the claims held by them) toward the payment of the purchase price, instead of paying cash, does not alter the situation and give stockholders rights which they would not otherwise have had. The stockholders are amply and adequately protected by the fact that the price realized at the sale must be approved by the court as fair and reasonable. The stockholders have the same right to

bid at the sale as that possessed by the reorganization managers as representatives of assenting creditors under the plan. Assuming, therefore, that the record does not mathematically establish that the liquidation of New York Title and Mortgage Company in the ordinary course will leave no surplus for stockholders, the exclusion of the stockholders from participation in the plan is nevertheless not violative of any of their rights.

An additional objection on the part of the stockholders, that the plan is unsound in that it proposes to leave a large part of the mortgage company's assets with the Superintendent of Insurance for liquidation, scarcely merits discussion. As counsel for the creditors' committee points out: " What the stockholders are in effect saying is that the statute is unsound since it imposes liquidation. Moreover, it needs no argument to persuade the court that it does not lie in the months of the stockholders to dictate to creditors how much of creditors' distributive shares in the liquidation proceedings they will use in the new business. It is for creditors, and not for stockholders, to say to what extent they will seek to avoid some of the rigors of the statute."

In the court's opinion the plan is fair and equitable. Counsel for the Superintendent of Insurance has stated his position in the following language: " If it is the desire of a substantial majority of creditors to engage in the business as provided in the plan, the plan as worked out is a fair and equitable one and should be submitted to the creditors so that they may have an opportunity to determine for themselves if it meets with their approval." He has also declared that " If it is the desire of a substantial majority of the creditors to engage in the title and mortgage business it appears to me that the plan that you have developed, with the inclusion of the title insurance company, is in advance of plans which have been suggested in other companies." Counsel for the Mortgage Commission has expressed the Commission's approval: " It affords the Commission a great deal of pleasure to come here and say that they are wholeheartedly back of this plan." As no valid objection to the proposed plan has been interposed, the referee's recommendations are adopted and the plan approved.

It may not be amiss in concluding to say a few words about the desirability of the proposed plan. The referee pointed out in his report that three courses were open with respect to the disposition of the assets of New York Title and Mortgage Company, consisting (1) of the capital stock of the New York Title Insurance Company, a subsidiary, representing an investment of approximately $4,000,000, and (2) other assets, including " cash, securities, mort-

gages, real estate, accounts receivable, etc., having an estimated realizable value of approximately $12,000,000." One of these courses was prompt liquidation of all the assets and distribution of the proceeds. A second course was to keep all the assets intact and use them as the capital fund of a new enterprise. The third course was to keep intact so much of the assets as could profitably be employed as capital for a functioning enterprise and to liquidate the balance.

Taking up (1) the capital stock of New York Title Insurance Company, the referee came to the conclusion that it would be unwise to put in on the auction block. If liquidated under conditions existing at the time of his report the company would necessarily be sold as a losing business. If the title plant alone were sold, it would have to be " torn from its position as an integral part of a going enterprise and sold as a single, unattached physical item." The referee pointed out that " On the other hand a title insurance business should have a substantially greater value if it functions in conjunction with a general mortgage business, each enterprise feeding the other. Those making contact with the title insurance company are potential customers of the mortgage company. Those doing business with the mortgage company require the services of a title insurance company." (Referee's report, p. 51.) Accordingly the referee reported that the most satisfactory course to pursue in respect of the investment in New York Title Insurance Company was to permit it to function as a private enterprise in close association with a company doing a general mortgage business. " Functioning as a private enterprise it should command a better price even if sale were desirable, than could be expected from its sale as an asset in a liquidation process." (Referee's report, p. 52.) Since the filing of the referee's report an application by the Superintendent of Insurance for approval of a proposed merger of Lawyers Title Corporation and New York Title Insurance Company has been granted. The possibility of such a merger was foreseen by the referee who, in his report, expressly referred thereto and to the benefits to be expected therefrom (p. 52): " There is a possibility that the title insurance business may be successfully merged, upon fair and reasonable terms, with the title insurance business of Lawyers Title Corporation or perhaps with some other institution. Indeed proceedings looking to such an end have been and are now pending before Mr. Justice FRANKENTHALER. If such an arrangement could be achieved, it may prove highly beneficial to all concerned for it would result not merely in a larger and better equipped title insurance company but it would also enable economies in operation

to be effected which should materially reduce the operating costs." With these views of the referee the court is in accord. It would have been unwise (a) to dispose of the New York Title Insurance Company as a losing concern or (b) to attempt to sell the title plant as a physical asset dissociated from its value as a going business; and now that the company is being merged with the Lawyers Title Corporation there appears to be even less justification for taking either of these courses. The merger should materially enhance the prospect of a successful title insurance company controlled by the new mortgage company which, in turn, will be owned and controlled by the creditors of New York Title and Mortgage Company.

As to (2) the remaining assets of New York Title and Mortgage Company, it is " the opinion of the overwhelming majority of those who appeared in this proceeding * * * that a mortgage company emerging from this reorganization with a sound capital structure has favorable prospects for a profitable future. In other words, the consensus of opinion is that much more can be realized upon these assets by utilizing them in a going business than by liquidating them now, even if the liquidation be a careful and prudent one." (Referee's report, p. 52.)

Notwithstanding the favorable prospects of such a mortgage company, only such portion of the assets of New York Title and Mortgage Company as is necessary to insure a sound capital structure for the new company is to be utilized in connection with said company. The remaining assets are to be liquidated by the Superintendent for distribution among creditors (and stockholders, if there is any surplus) as promptly as is consistent with prudent liquidation. " In this way creditors will receive the advantages of a going title insurance company functioning jointly with a going mortgage institution, and the likelihood of fairly early and periodic dividends on those assets which are not required for the new enterprise." (Referee's report, pp. 53, 54.)

The plan being fair and equitable to all concerned, the motion to confirm the referee's report is granted. Settle order.