## In the Matter of the Liquidation of NEW YORK TITLE AND MORT-GAGE COMPANY.

Supreme Court, Additional Special Term, New York County, June 19, 1939.

*Edward F. Keenan,* for the Superintendent of Insurance of the State of New York, as liquidator of the New York Title and Mort-gage Company.

*Barber, Giddings & Grunden* [*William A. Barber* of counsel], for the committee of stockholders.

*Wagner, Quillinan & Rifkind* [*S. H. Rifkind* and *S. R. Nussenfeld* of counsel], for the creditors' committee.

*Jacob L. Holtzmann, Special Counsel,* for the Mortgage Commission of the State of New York.

*M. H. Blinken,* for various certificate holders.

*Sherman S. Rogers,* for the trustee of Series C-2.

*Kramer & Kleinfeld* [*B. Kaprow* of counsel], for the trustees of Series BK.

*Simpson, Thacher & Bartlett,* for the trustees of Series N-101, etc.

*Thomas Keogh,* for the trustees of Series Q and N-100.

*Abraham Geller,* for the trustees of Series N-108.

*Max J. Rubin,* for various certificate holders.

*Abraham J. Halprin,* for the trustees of Series C-3, etc.

*Maurice B. Blumenthal,* for the trustees of Series BX-17 and N-79.

FRANKENTHALER, J. This is an application by the Superintendent of Insurance, as liquidator of the New York Title and Mortgage Company, for an order (1) modifying the plan of reorganization heretofore approved for said company and (2) approving a proposal of the Superintendent to offer to sell certain assets held by him as liquidator to such of the company's creditors as may desire to participate in the purchase thereof, upon terms and conditions which will be presently referred to. The Superintendent asks that the instant proceeding be consolidated with the reorganization proceedings now pending before the court.

By order dated May 12, 1937, this court took jurisdiction of a proposed plan for the reorganization of New York Title and Mortgage Company and appointed a referee to conduct hearings upon the plan and upon any other plans which might be submitted to the referee, together with any suggested modifications or amendments, and to report thereon. After extensive hearings the referee made his report, dated February 11, 1938, in which he recommended approval of a plan of reorganization dated January 27, 1938. Said plan was found by this court to be fair and equitable to all concerned, and the motion to confirm the report of the referee was accordingly granted. (*Matter of New York Title & Mortgage Co.,* 168 Misc. 60.) During the interim between the filing of the referee's report and the granting of the motion to confirm the same, this court granted an application of the Superintendent of

Insurance for approval of a proposed merger of Lawyers Title Corporation and New York Title Insurance Company, these corporations being wholly owned subsidiaries of Lawyers Title and Guaranty Company and New York Title and Mortgage Company, respectively. (See *Matter of New York Title & Mortgage Co., supra,* p. 68.) The merger has since been consummated, the name of the merged company being Lawyers Title Corporation of New York. As the result of the merger, the Superintendent, *as liquidator of New York Title and Mortgage Company,* holds 136,000 shares of common stock of the merged company of a par value of ten dollars each, 1,500 shares of preferred stock of a par value of one hundred dollars each, and warrants entitling him to purchase 6,000 additional shares of common stock at twenty-five dollars a share. *As liquidator of Lawyers Title and Guaranty Company,* the Superintendent holds 4,500 shares of preferred stock and warrants entitling him to purchase 18,000 shares of common stock at twenty-five dollars per share. As holder of all of the presently outstanding common stock the Superintendent, in his capacity of liquidator of New York Title and Mortgage Company, has substantially the entire equity interest in the merged title company.

The plan of reorganization heretofore approved by the court was formulated prior to the merger. It contemplated that the Superintendent of Insurance, as liquidator of New York Title and Mortgage Company, would, upon request of the reorganization managers provided for in the plan, cause a new corporation to be organized for the purpose of operating as a mortgage company, and that he would transfer to said company all of the capital stock of New York Title Insurance Company, together with additional assets of New York Title and Mortgage Company. The plan provided that whenever sufficient assents thereto had been obtained the reorganization managers would request the Superintendent of Insurance to apply for an order authorizing him to sell the capital stock of the mortgage company at a price and on terms satisfactory to him and approved by the court. It further authorized the reorganization managers to bid for all or substantially all of the stock of the mortgage company for the benefit of assenting creditors and, in the event that they were the successful bidders, to apply on account of the purchase price such amounts as might be due and owing to them from the liquidator as their distributive shares on claims of assenting creditors held by them through assignment from the latter.

In view of the merger of New York Title Insurance Company with Lawyers Title Corporation, the Superintendent of Insurance deems it advisable that the plan of reorganization be modified. He

points out that, because of the uniqueness of a title plant and a title business, it is very difficult to obtain a buyer at a fair price. By selling the title plant and title business to *creditors* of New York Title and Mortgage Company who are desirous of continuing the business, he believes that he can obtain a price at least as high as any which a sale to others would yield. Representatives of substantial groups of creditors have informed the Superintendent that " a large portion of the creditors would prefer to buy the stock of the title company held by the Superintendent at a price which would give the general estate as large a return as any other sale, provided at the same time they could acquire a companion mortgage company or sufficient assets to enable them to organize a mortgage company "— the argument being made " that a title company can be run most profitably if affiliated with a mortgage company." Conferences have been had with representatives of creditors, particularly the creditors' committee which originally sponsored the reorganization, with a view to selling the stock of the merged title insurance company, and additional assets sufficient to enable the organization of a mortgage company, to such creditors as might desire to participate in the purchase thereof. As a result of these conferences the Superintendent has arrived at the conclusion that it would be in the interest of the general estate to offer to sell the securities of the merged title company held by him as liquidator of New York Title and Mortgage Company for $3,750,000, together with from $2,500,000 to $5,000,000 of additional assets, consisting of the stock of the mortgage company, for the organization of which the original plan provides, or assets which will enable the participating creditors to organize a mortgage company. The aggregate price would be from $6,250,000 ($3,750,000 plus $2,500,000) to $8,750,000 ($3,750,000 plus $5,000,000), depending upon the amount of additional assets sold. The price, in the opinion of the Superintendent, " is fair." The $3,750,000 to be paid for the securities of the merged title company, held by the Superintendent as liquidator of the New York Title and Mortgage Company, includes $800,000 as the price of the title plant, furniture, fixtures and good will of the merged title company. The additional assets are to be paid for according to their full value. The price, under the Superintendent's proposal, is to be payable out of the dividends to which participating creditors would be entitled in the liquidation proceeding of New York Title and Mortgage Company, unless previously paid in cash, and interest at the rate of four per cent per annum would run from the date of the consummation of the transaction. In order to facilitate the organization of the creditors into a buying syndicate it is necessary, in the opinion of the creditors' committee

and other creditors' representatives, as well as in the judgment of the Superintendent of Insurance, to have persons designated by the court for the purpose of organizing and representing the participating creditors and receiving from them assents to the purchase as well as assignments of their claims. The compensation and disbursements of these " reorganization managers " and all other expenses of the reorganization are to be payable solely out of the interest of the assenting creditors in the estate. In order to meet the expenses of the reorganization managers in the interim, the Superintendent proposes to advance to them, subject to the approval of this court, such sums as he may deem appropriate, taking as security a pledge of the claims of the assenting creditors against the title company in liquidation.

In order to consummate the plan and the sale as soon as possible, the Superintendent asks that the plan of reorganization heretofore approved by the court be modified so as to permit the reorganization managers to declare it effective when the holders of not less than a majority in amount of all the allowable claims as estimated by the Superintendent shall have assented to the plan. The Superintendent is of the opinion that assents by holders of fifty per cent of the total claims will " more than suffice to permit of a consummation of the plan as modified, and to pay for the minimum amount of assets to be purchased under the Superintendent's proposal." If at the time the sale proposed by the Superintendent is consummated the holders of sixty per cent in amount of all the estimated allowable claims shall have assented to the plan, the amount of the additional assets to be sold (*i. e.*, in addition to the securities of the merged title company) is to be $3,500,000 instead of $2,500,000; if at said time the holders of seventy per cent in amount of all the estimated allowable claims shall have assented to the plan, the amount of the additional assets to be sold is to be $4,500,000 instead of $2,500,000; and if at the time the holders of eighty per cent in amount of all the estimated allowable claims shall have assented, the amount of the additional assets to be sold shall be $5,000,000 instead of $2,500,000. It is thus clear that the greater the number of assents the larger the amount of the assets of the new mortgage company to be operated by the creditors and the better its chances for success.

The Superintendent states that he is now engaged in the determination of the claims against the New York Title and Mortgage Company in liquidation and that he expects to have a substantial portion of the claims determined in the near future. If the present application is granted the reorganization managers will be soliciting assents from creditors simultaneously with the progress of the

Superintendent's determination of claims against the company in liquidation, and the Superintendent will be enabled to determine with fair accuracy the amounts of allowable claims held by assenting creditors and the ratio of such claims to the total allowable claims.

The present application meets with the approval of the Mortgage Commission. The only opposition thereto is interposed by stockholders of New York Title and Mortgage Company. One of the grounds of objection is that, although the Superintendent is obligating himself to sell the securities of the merged title company and the additional assets at a specified price, there is at present no one who agrees or even proposes to purchase them. The proposed agreement expressly provides that neither the reorganization managers, who are to endeavor to obtain assents from creditors, nor creditors or stockholders are to be personally liable for the payment of the purchase price. The Superintendent is to look for payment of the purchase price and the interest accrued thereon solely to the security pledged with him and the dividends payable on the claims of assenting creditors. Since there is no definite assurance that sufficient assents and assignments of claims from creditors will be obtained to make possible the payment to the Superintendent of the purchase price fixed by him, it is argued that what the Superintendent seeks to have the court approve at this time is not a present sale of assets nor an agreement to sell them in the future, but rather the granting of an option by him, to a buyer not yet in existence, to purchase certain assets at a fixed price. The stockholders contend that the granting of such an option is not authorized by section 421 of the Insurance Law or by any other statute.

Section 421 of the Insurance Law, as it read at the time of the making of the present application, authorized the Superintendent, subject to the court's approval, " to sell or otherwise dispose of the real or personal property, or any part thereof, of an insurer against whom a proceeding has been brought under this article." Even if it be assumed that said language is not broad enough to authorize the granting of an *option* to a presently non-existent buyer to purchase assets at a fixed price, since the making of the application section 421 has been amended in such a way as to render it clear that the object of the amendment was to cover a situation such as the one here presented (Laws of 1939, chap. 886, approved by the Governor, June 14, 1939). The amendment added the following language: " The Superintendent of Insurance may, subject to the approval of the court, sell or agree to sell or offer to sell any assets of such an insurer to such of its creditors who may desire to participate in the purchase thereof, to be paid for in all or any part out of

dividends payable to such creditors, and upon application of the Superintendent of Insurance, the court may make an order approving the plan or proposal of the Superintendent to sell or offer to sell and authorizing the submission thereof to the creditors of such insurer for their assent to such participation, and the court may designate representatives to act for such assenting creditors in the purchase, holding or management of such assets, and the Superintendent may, subject to the approval of the court, advance the expenses of such representatives against the security and the claims of such assenting creditors." The language of the amendment is so clearly and specifically applicable to the instant application that there can no longer be any question but that the court now possesses the power to grant the Superintendent's application.

Even though the court now has the undoubted power to approve the Superintendent's proposal, it does not necessarily follow that a proper case is presented for the exercise of such power. The proposed agreement provides that if sufficient assents have not been obtained by September 30, 1939, the Superintendent shall have the right to withdraw from the agreement of sale " at any time thereafter on ninety days' notice to the reorganization managers." This means that the Superintendent is granting an option for at least the balance of the year 1939 — not to mention the fact that the option may be of even longer duration if the Superintendent does not elect to exercise the right given him to cancel the option after September 30, 1939. During the period of the option, the termination date of which subsequent to the end of the year 1939 rests entirely with the Superintendent, it is possible, even if not probable, that the value of some of the assets to be sold, particularly the title plant and good will of Lawyers Title Corporation, may increase substantially in value. Although the price for which the Superintendent proposes to make the sale to assenting creditors must be deemed to be fair and reasonable as of the present time — no one having disputed the allegation in the Superintendent's petition that the price is fair — it may well be that during the period for which the Superintendent permits the option to remain in effect the price may, by reason of change of circumstances, become inadequate. This circumstance is, however, insufficient in itself to require the denial of the application. The rights of non-assenting creditors and stockholders may be adequately protected through the addition of a provision that the agreement of purchase shall not take effect unless the price therein specified shall have been approved by the court (on notice to all creditors and stockholders) as fair and reasonable *as of the time when the agreement would otherwise become effective through the receipt of sufficient assents from creditors*

*desiring to participate.* In this way all non-assenters will be assured that assets in the hands of the liquidator will not be disposed of for less than their fair and reasonable value at the time of such disposal.

The objection of the stockholders to the provision for the making of advances by the Superintendent on the security of the claims of assenting creditors which will be pledged with the Superintendent is without merit, in view of the fact that section 421 of the Insurance Law, as recently amended, expressly authorizes such advances. The requirement that all advances be approved by the court protects non-assenting creditors and the stockholders against the possibility that excessive advances may be made which may conceivably prejudice them.

Objection is made to the Superintendent's proposal that the plan of reorganization be modified so as to permit of its being declared effective when the holders of not less than a majority in amount of all allowable claims as estimated by the Superintendent shall have assented to the plan. The basis of this objection is the claim of the stockholders that the Superintendent has been proceeding upon improper theories in determining the amounts for which claims against the company in liquidation should be allowed and that he would proceed upon the same theories in determining whether sufficient assents to the plan of reorganization had been obtained to permit it to be declared effective. In order to guard against any such possibility, the Superintendent's proposal will be modified by adding a provision that the plan shall not be declared effective until and unless the court, on proper application, shall have approved the taking effect of the plan. Such approval will not be obtainable unless the Superintendent's estimates as to claims possess substantial foundation.

An additional modification of the plan in respect to the number of reorganization managers is also advisable. In connection with the reorganization of Lawyers Mortgage Company four reorganization managers were designated. The New York Title and Mortgage Company is a much larger company and it will be necessary to obtain assents from a much greater number of creditors than was the case in the Lawyers Mortgage reorganization. It is exceedingly desirable that the efforts to obtain sufficient assents to enable the plan to be declared effective proceed as rapidly as possible, particularly in view of the fact that the agreement may be terminated by notice served as early as September 30, 1939. It is also important that as many assents as possible be procured for, as previously pointed out, the size of the new mortgage company and its prospects will depend to a considerable extent upon the number

of assents obtained. Members of the creditors' committee of New York Title and Mortgage Company have already established contacts with many of the certificate holders which should stand them in good stead in obtaining assents, and by far the largest numbers of contacts have been established by those members of the creditors' committee who are also trustees of certificated issues. The trustees, by virtue of their long experience in dealing with the problems involved, are best equipped to cope with the questions that are likely to arise. As it would be impracticable to designate as many reorganization managers as there are members of the creditors' committee, the plan will be modified so as to provide for the designation of as many reorganization managers as there are trustees of certificated issues who are members of the creditors' committee. Since no useful purpose would be served by naming more than one trustee of any issue, there will be a total of six trustee members of the creditors' committee to be designated as reorganization managers.

The motion is granted subject to the modifications above indicated. Settle order.